UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

YOSEF MAGID and JACOB ROTTENBERG

              Index No.

        Petitioners,

   -against-

ARI WALDMAN

                     **PETITION FOR JUDGMENT CONFIRMING FINAL ARBITRATION AWARD**

        Respondent.

---------------------------------------------------------------x

      Petitioners, Yosef Magid ("Magid") and Jacob Rottenberg ("Rottenberg") (collectively referred to as the "Petitioners"), by and through their undersigned attorneys, as and for their Petition for the entry of judgment confirming the final arbitration award entered against Ari Waldman ("Waldman" or "Respondent"), respectfully represent and allege:

## PARTIES

1. Petitioner, Magid, is a citizen of the State of New Jersey.

2. Petitioner, Rottenberg, is a citizen of the State of New Jersey.

3. Respondent, Waldman, upon information and belief, is a citizen of the State of New York.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that there is a complete diversity of citizenship between the parties and the matter in controversy, which is Three Hundred Fifty Thousand One Hundred and Thirty Five ($350,135.00) Dollars, exceeds the sum or value of $75,000.00, as required by the statute.

5. Venue is proper in this judicial district pursuant 9 U.S.C. § 9 because the arbitrator's award was issued in the Southern District of New York.

6. The arbitration agreement which was made between the parties is valid, has not been revoked and involves commerce.

7. No application has been made to the arbitrator for correcting the arbitration award.

8. Pursuant to 9 U.S.C. § 1 *et seq.*, (the "Federal Arbitration Act"), Petitioners are entitled to judicial confirmation of the Award.

9. Pursuant to the Federal Arbitration Act, Judgment should be entered confirming the Award in its entirety.

## BACKGROUND

10. On February 2, 2017, the Petitioners and Respondent hereto (collectively, the "Parties") entered into a written agreement (the "Contract").

11. The subject matter of the Contract was for Petitioner's purchase of the Respondent's interest in an entity holding a parcel of real estate.

12. Subsequent to the execution of the Contract, multiple disputes stemming from the Contract arose between the Parties.

13. In order to resolve the said dispute, on October 10, 2018, the Parties entered into a written arbitration agreement (the "Arbitration Agreement").

14. The Arbitration Agreement provided that "in the event that the deal [in the Contract] does not close: (1) Mr. Thomas Lieberman retains full unconditional jurisdiction to arbitrate on any dispute that may arise between Mr. Ari Waldman & Mr. Yosef Y. Magid [and] Mr. Chaim Y. Rottenberg." A true copy of the Arbitration Agreement is annexed hereto as Exhibit "A".

15. Pursuant to the Arbitration Agreement, the parties brought the Contract dispute to Mr. Yoel Tzvi Lieberman (the "Arbitrator"), to resolve the said disputes through binding arbitration.

16. Thereafter, on October 10, 2018, the Arbitrator commenced the first of many lengthy arbitration sessions (the arbitration sessions collectively, the "Hearing").

17. The Hearing was conducted at a time and place mutually agreed upon by the Parties, in the full participation and presence of the Parties.

18. The Hearing sessions spanned over the course of approximately eleven (11) months.

19. Throughout the course of the Hearing sessions, the Parties submitted their proofs to the Arbitrator and they participated in many arbitration sessions.

20. Each of the individual hearings were presided over by the Arbitrator and included full participation from the Parties.

21. The Hearing was finally concluded in September of 2019, after all of the Parties were present, heard, submitted their proofs to their satisfaction and stated that they had no further testimony to offer.

22. Thereafter, on December 10, 2019, after the Arbitrator had completed his study of all the facts, circumstances, elements and proofs entered into the controversy submitted by the Parties, the Arbitrator, came to a final decision and made an award in writing, duly acknowledged and dated December 10, 2019 (the "Award"), which is attached hereto as Exhibit "B".

23. The Award was entered in favor of the Petitioners.

24. The Award provides, *inter alia,* that Respondent shall pay the Petitioners, immediately, the sum total of Three Hundred and Fifty Thousand, One Hundred and Thirty Five ($350,135.00) Dollars, plus the Petitioners' attorneys' fees and any costs and fees incurred by Petitioners in confirming and enforcing the Award (the "Decision").

25. Upon information and belief, the Award was mailed to Respondent on December 11, 2019, by certified mail.

26. Pursuant to the terms of the Award, the Award is final and binding on the Parties and may be enforced in a court of New York.

27. Pursuant to the Award, Respondent is required to immediately pay the Petitioners the sum awarded to Petitioner, in an amount to be determined by the Court, estimated to be no less than Three Hundred and Fifty Thousand, One Hundred and Thirty Five ($350,135.00) Dollars.

28. The Respondent has not paid the Petitioners any portion of the Decision as required by the Award.

29. This Petition has been brought within one year from the delivery of the Award to the Respondent, and the Award has not been vacated, modified, or corrected pursuant to 9 U.S.C. § 9.

30. No request for the relief sought herein has been previously made to this or any other court.

31. Therefore, the Award should be confirmed and enforced pursuant to 9 U.S.C. § 9.

**WHEREFORE**, Petitioners respectfully request that the Court enter an order:

1. Confirming the Award of the Arbitrator;

2. Directing judgment to be entered upon the Award.

3. Granting judgement in favor of Petitioners and against Respondent in the amount of Three Hundred and Fifty Thousand, One Hundred and Thirty Five ($350,135.00) Dollars, plus attorneys' fees and Petitioner's costs to confirm and enforce the Award; and

4. Granting such other and further relief as the Court deems proper.

Dated: December 16, 2019

**Law Office of Maurice I. Rosenberg**
*Attorneys for Petitioners*

By: _____
Maurice I. Rosenberg, Esq.
930 E. County Line Road,
Building B, Suite 101
Lakewood, New Jersey 08701
(732) 719-6383

# EXHIBIT "A"

## AGREEMENT TO SUBMIT TO ARBITRATION

WE the undersigned hereby agree to submit to binding arbitration all controversies [claims and counter claims] between the undersigned parties including but not limited to the following controversy:

WE further agree that the controversy be heard and determined by the arbitrator,
Mr. Yoel Tzvi Liebermann.

It is agreed that the 50% of the arbitrators` fee and/or expenses shall be paid by each party to the controversy; that the arbitrator may make their award based upon Din Torah, compromise, settlement, or any other way they wish to reach a decision; that no transcript of the proceeding need be made unless the arbitrator decides to hire a stenographer or minute taker whose cost shall be paid equally by the parties; that the arbitrator may follow any procedure as he decide; that hearings may be held on Sundays and other legal holiday; that the award of the arbitrator shall be in writing and shall be signed by the arbitrator and need not be acknowledged or notarized to be confirmed or enforced.

The parties understand that they have the right to be represented by attorneys and/or other advisors in the arbitration at any time, but that any party may elect to proceed without an attorney, and the parties shall have the right to argue for themselves before the arbitrator. The parties hereby waive formal notice of the time and place of the arbitration proceeding and consent that the arbitration be held and commence with the jurisdiction of the arbitrator to continue until a final award be made. The parties agree that the arbitrator shall have the right to hear testimony and evidence without the presence of a party if the party doesn't attend a scheduled hearing. Furthermore, the parties agree that the arbitrator shall have exclusive jurisdiction to decide any and all issues, including but not limited to discovery requests. In the event that after an award is made a dispute between the parties arises as to the interpretation of the award, compliance of the parties, or if a party motions for reargument due to their claim of a judicial error or new evidence etc. the parties agree that the arbitrator shall have jurisdiction on the matters to the extent permitted by law. The arbitrator need not explain to the parties or to anyone else the reason for their decision, and their decision is not open for appeal neither in any religious court nor in any secular court.

The parties agree to faithfully abide by and perform any interim or final award or decision rendered by the arbitrator. The decree of the arbitrator shall be enforceable in the courts in the State of New York and/or New Jersey and/or in any court of competent jurisdiction for any action or proceeding to confirm. The arbitrator shall not be required to take an oath or to administer an oath to any witness or party at the hearing. The parties submit themselves to the personal jurisdiction of the courts of the State of New York and/or New Jersey and/or in any court of competent jurisdiction for any action or proceeding to confirm or enforce a decree of the arbitrator pursuant to Article 75 of the New York Civil Practice Law and Rules. The parties waive personal service process for such confirmation or enforcement proceedings. Service shall be sufficient if mailed via regular or via certified mail return receipt requested to the adverse party at the last known address.

Dated: OCT 10 2019

# EXHIBIT "B"

# Final Arbitration Award

In the matter of the Arbitration between
ARI WALDMAN ("Waldman"), of 4 Jeffrey Place, Monsey, NY 10952
and
YOSEF MAGID ("Magid") of 1476 Towers Street, Lakewood, NJ 08701,
JACOB ROTTENBERG ("Rottenberg"), of 9 Soncino Place, Lakewood, NJ 08701,
(with RAM (as defined hereinafter), Magid and Rottenberg known as the "RAM Parties"),
(collectively the "Parties")

## Jurisdiction:

This Arbitration Award is issued pursuant to an arbitration agreement dated October 10, 2018 (the "Arbitration Agreement"), that was signed and executed by Parties, wherein the Parties agreed to submit to me, Mr. Yoel Tzvi Liebermann, as arbitrator ("Arbitrator"), and submitted to my exclusive jurisdiction, the adjudication of all claims and counterclaims. Both Parties were advised of their rights to be represented by legal counsel before executing the Arbitration Agreement, and were given ample opportunity to do the same. Upon them reaching an agreement on the terms and scope of the arbitration, Parties executed the Arbitration Agreement in my presence. Each party affixed his signature both in Hebrew and English.

Pursuant to the Arbitration Agreement, this ruling needs no legal or other discussion or elucidation.

The Parties all actively participated in these proceedings. After hearing each of their arguments, and after each party rested its case, all Parties requested that I issue a ruling pursuant to my authority under the Arbitration Agreement.

## Background:

The Parties had multiple disputes in connection with several transactions related to a partner buyout and joint venture in the development of a 180 unit multi-family building on parcel of real property known as 170 Avenue F, Bayonne NJ, also known as Block 445 lot 1.01, (formerly known as lots 1,2,3,4,5 & 7) in the City of Bayonne, Hudson County New Jersey (the "Property"). The dispute related to their joint venture known as Parkview Realty Holdings, LLC ("Parkview"), a New York limited liability company which held title to the Property. At the time of the arbitration, RAM Development, LLC, a New Jersey limited liability company ("RAM"), a partnership between Magid and Rottenberg, was the Managing Member of Parkview and Waldman was an investor and member thereof.

The arbitration proceedings commenced on October 10, 2018 and continued for many months thereafter. During that period I presided over, and partook in numerous sessions which lasted many hours, with each Party presenting their claims and allegations.

As part of the discussions and the dispute, the RAM Parties advised Waldman that due to economic realities at the time, they were contemplating the sale of the Property before a decision would be issued, and were seeking Waldman's cooperation and consent to sell the Property, and agreed that the distribution of the sale proceeds would be subject to the Arbitration Agreement. After hearing the various arguments related to the disposition of the Property before the issuance of my decision, I concurred with RAM as to this proposal, and recognized that

the sale of Property was in the best interest of all the Parties. In November 2018, I instructed and persuaded Parties to execute all documents necessary to complete the sale.

The arbitration proceedings were still ongoing, and there was a dispute how much of the sale proceeds should be distributed to each Party, and how much money (if any) each Party would owe the other based on their agreements.

Due to time constraints, in order to avoid adverse economic (and tax) consequences, I made an interim decision, and directed the parties, in order to ensure the sale of the Property was completed, that the sale should proceed with the interim structure as follows;

1. The Property was to be sold on or around December 2018.
2. RAM or its affiliates will invest in and become a partner/member in the acquiring entity.
3. Waldman would receive as a liquidating distribution of his partnership interests in Parkview. This would be distributed as an interest in a newly formed entity known as Parkview Realty WR, LLC, ("Parkview WR") a New Jersey limited liability company, which would hold a TIC interest in the Property, and upon the sale of the Property, Parkview WR, or its qualified intermediary, would receive Parkview WR's share of the sale proceeds.

On or about December 17, 2018, in accordance with my ruling, the Property was sold, and the Parkview WR 1031 intermediary was wired the Parkview WR share of the net sale proceeds in the amount of $2,406,828.

The above-mentioned liquidating distribution of Waldman's Parkview partnership interests, as well as the calculation of TIC percentages allocated to Parkview WR and Waldman, were done with the explicit agreement and understanding that neither party waived its claims and that the arbitration proceeding would continue as before, and that any distributions to RAM, Waldman and Parkview WR were subject to my final ruling and award.

For tax structuring purposes, Parkview WR was formed on or about November 2018, as a multi member LLC, with Magid and Waldman as the only two members; Waldman with a 99 percent interest, and Magid owning a 1 percent interest.

Subsequently, on or about May 23, 2019, upon my directives, to enable Parkview WR and Waldman to use the sale proceeds to purchase replacement properties and obtain debt financing, Magid transferred his membership interest in Parkview WR to a member of Waldman's family. Upon information and belief, Parkview WR has since disbursed its funds in a 1031 exchange acquiring like kind assets in NY. The foregoing was all done with the consent of the Parties and in accordance with my directive.

The Parties continued to appear before me and presented claims, defenses and counterclaims. Numerous sessions were conducted; each lasting many hours. Multiple agreements, documents, evidence and testimony were produced and presented. I reviewed many documents including, but not limited to, the Investment Agreement dated February 2, 2017, the Agreement dated March 30, 2017, and the Amended and Restated Operating Agreement dated May 8, 2017. I reviewed the GP term sheets, GP Agreement, LP Term Sheet, and the LP Agreement. I reviewed the underwriting, and invoices for costs incurred. I reviewed the email by Jacob Rottenberg sent on 08/08/2019 titled "Waldman vs RAM: Claims & Counter Claims", the email by Mr. Waldman sent on 09/02/2019 and the attached document titled "Waldman - Ram Summary" Parties were given ample opportunity to present their arguments and claims and any additional evidence and documentation. Following the conclusion of the hearings, the Parties submitted written closing arguments. The Parties exhausted their arguments and rested the case and requested that I render my decision.

**Findings and Decision:**

I hereby rule as follows:

1. Waldman shall pay Magid and Rottenberg the sum of Three Hundred and Fifty Thousand, One Hundred and Thirty Five Dollars and 00/100 Cents ($350,135.00)
2. Waldman shall not transfer any assets or his interests in Parkview WR prior to paying the award in # 1 above. A court of competent jurisdiction may enter an ex parte injunction or attachment to prevent any dissipation of Waldman's assets including assets belonging to any entity owned or controlled by Waldman.
3. If a court order, or any further acts or proceedings, is necessary to confirm or enforce this award or collect on any judgment, the court shall award attorneys' fees and costs to Magid and Rottenberg for any fees and costs arising from the proceeding to confirm and or enforce this award or any resulting judgment.
4. This order shall be effective immediately.
5. This award shall be in full and final resolution of all claims and counterclaims submitted to the arbitrator. All claims not expressly granted herein are hereby denied.
6. The parties may enter this award in any court of competent jurisdiction including, without limitation, the Courts of New York pursuant to Article 75 of the CPLR or the Courts of New Jersey pursuant to New Jersey Court rules.

Signed and ordered on this ___11th___ day of December 2019, in Brooklyn, Kings County, New York

_____          _____
Witness                             Yoel Tzvi Liebermann, Arbitrator

State of ___New York___ )
                        ) ss.:
County of ___Kings___   )

On the ___11th___ day of December in the year 2019, before me, the undersigned notary public, personally appeared Yoel Tzvi Liebermann, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual(s) acted, executed the instrument.

___Chonlada Jaroenrut___ Notary Public

CHONLADA JAROENRUT
NOTARY PUBLIC, STATE OF NEW YORK
Qualified in New York County
No. 01JA6314648
My Commission Expires November 10, 2022