UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
YOSEF MAGID and JACOB ROTTENBERG,           :
:
                              Petitioners,     :                19-CV-11516 (JMF)
:
    -against-                                  :
:          MEMORANDUM OPINION
ARI WALDMAN,                                :                AND ORDER
:
                              Respondent.    :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       On August 19, 2020, the Court issued an Opinion and Order (the "Opinion") granting in part and denying in part a petition filed by Yosef Magid and Jacob Rottenberg to confirm an arbitration award (the "Award") entered in their favor against Respondent Ari Waldman. *See Magid v. Waldman*, No. 19-CV-11516 (JMF), 2020 WL 4891218 (S.D.N.Y. Aug. 19, 2020) (ECF No. 36). Specifically, the Opinion confirmed the Award, except to the extent that it provided attorney's fees to Petitioners, and denied Waldman's cross-petition to vacate the Award. Waldman now moves for reconsideration. *See* ECF No. 44. His primary argument is that the Court wrongly concluded that he was aware of — and therefore waived any objection to — the professional relationship between the arbitrator, Yoel Tzvi Liebermann (the "Arbitrator"), and Rabbi Gavriel Stern, whom Waldman was paying to "represent" him in connection with the arbitration. For the reasons stated below, the motion is DENIED.

       The standards governing motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure and Local Rule 6.3 are the same and are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging

the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). Significantly, a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks omitted). Instead, the primary grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). That is, reconsideration will generally be denied unless "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Medisim*, 2012 WL 1450420, at *1 (internal quotation marks omitted). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks omitted). Ultimately, "a district court has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

Applying these standards, the Court concludes that Waldman's motion is without merit. In its Opinion, the Court acknowledged that the arbitration was not "a model of what alternative dispute resolution should be" given, among other things, various ties between the Arbitrator and Stern. *Magid*, 2020 WL 4891218, at *5. The Court ultimately concluded, however, that

"Waldman knew all of the relevant facts during the arbitration and did not adequately object" until after he had lost, thereby waiving any objections. *Id*. Waldman now takes issue with that conclusion, but in only one respect: He contends that the Court was mistaken in concluding that he knew that Stern — a non-lawyer whom Waldman believed was acting as his attorney, *see* ECF No. 18 ("Waldman Decl."), ¶ 28; ECF No. 30 ¶ 2 — "was in fact 'doubling' as a clerk" for the Arbitrator. ECF No. 45 ("Resp.'s Br."), at 5.[1] This contention, however, is controverted by the record, most notably by materials submitted by Waldman himself. For instance, Stern sent emails to both sides "relating to deadlines and submissions" in the arbitration proceedings, Waldman Decl. ¶ 30, including one email dated October 31, 2018, and signed "T. Liebermann," ECF No. 18-1, at 1, and another, sent on August 8, 2019, signed by Stern, "[*i*]*n the name of Mr. Liebermann, Arbitrator*," *id.* at 4. In a third email from Stern to Waldman, dated November 23, 2018, Stern wrote that the Arbitrator had "requested . . . that [Stern] direct both parties in [the Arbitrator's] name" to prepare certain documents. *Id.* at 2.

By themselves, these emails make plain that Waldman knew about Stern's role with respect to the Arbitrator. But any doubt on that score is resolved by what Waldman did after receiving them. As he himself admits, the emails led him to "suspect[] that Stern was making arguments against [his] interests to the Arbitrator" and eventually to "confront[] Stern," who "admitted" to Waldman "that he was not acting as [Waldman's] advocate to the Arbitrator." Waldman Decl. ¶¶ 31-32. In particular, on August 27, 2019, Waldman and his wife had a

---

[1] Stern and the Arbitrator also had a separate business relationship, and the Arbitrator owed Stern approximately $1.7 million. *See* Waldman Decl. ¶ 44. Waldman concedes that he was aware of these ties during the arbitration. *See* ECF No. 49 ("Resp.'s Reply Br."), at 8 (noting that Stern's role as the Arbitrator's clerk was "the only [objection] unknown to Waldman throughout the duration of the arbitration").

meeting with Stern that Waldman recorded. *See* ECF No. 18-3 ("Transcript"). During this conversation — a transcription and translation of which Waldman himself submitted to the Court — "Stern disclosed . . . that he was acting as a hybrid counselor to Mr. Lieberman[n]." Waldman Decl. ¶ 34.[2] Indeed, Stern advised Waldman that the Arbitrator "sees [him] as halfway [Waldman's] rabbinical lawyer and halfway as not," such that the Arbitrator "wants to hear from [him]" and seeks his "opinion." *See* Transcript 2. In the same conversation, Waldman acknowledged that Stern was "playing it neutral" in front of the Arbitrator so that the Arbitrator would not know that Stern was simultaneously acting as Waldman's advocate. *Id.* at 30. In other words, Waldman not only knew about Stern's working relationship with the Arbitrator; he even tried to exploit the relationship to his benefit. It was only later, when this gambit failed and the Arbitrator issued the award against Waldman, that Waldman was heard to complain.

In the face of this evidence, Waldman's assertion that he lacked actual knowledge of Stern's role with respect to the Arbitrator rings hollow. *See* Resp.'s Br. 6-7; Resp.'s Reply Br. 2. In any event, Waldman is wrong in contending that actual knowledge is the relevant standard. *See, e.g.*, *Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 506 (2d Cir. 2018) (noting that the Court of Appeals has "declined to vacate awards because of undisclosed relationships where the complaining party *should have known* of the relationship, or *could have learned of the relationship* just as easily before or during the arbitration rather than after it lost its case" (emphases added) (internal quotation marks omitted)); *J. P. Stevens & Co. v. Rytex Corp.*, 34 N.Y.2d 123, 129 (1974) ("If a party goes forward with

---

[2] Waldman argues that there is a distinction between being a "counselor" and being a "clerk," *see* Resp.'s Reply Br. 6-7 & n.6, but any such distinction is purely semantic. By contrast, the distinction between a "lawyer" and "non-lawyer" is anything but semantic. Although Waldman repeatedly asserts that Stern was his lawyer, and impugns Stern for violating attorney-client confidences, Stern was not actually a lawyer. *See* ECF No. 19, at 4.

4

arbitration, having actual knowledge of the arbitrator's bias, *or of facts that reasonably should have prompted further, limited inquiry*, it may not later claim bias based upon the failure to disclose such facts." (emphasis added)).  Waldman is also wrong in arguing that he was under no obligation to raise an objection "until *after* the arbitral award [was] rendered."  Resp.'s Br. 8.  In support of that argument, Waldman relies exclusively on *Marc Rich & Co., A.G. v. Transmarine Seaways Corp. of Monrovia*, 443 F. Supp. 386 (S.D.N.Y. 1978).  *See* Resp.'s Br. 8-9.  But a four-decade-old district court decision is not, of course, a "controlling decision[]."  *Medisim*, 2012 WL 1450420, at *1 (internal quotation marks omitted).  Nor does *Marc Rich & Co.* stand for the proposition that where a *party*, such as Waldman, has a basis to attack an arbitrator's qualifications but fails to object, that party can later attack the award on that basis; it merely stands for the proposition that *courts* should not entertain pre-arbitration attacks on an arbitrator's qualifications.  *See* 443 F. Supp. at 387-88.  As the Court noted in its earlier Opinion, *see Magid*, 2020 WL 4891218, at *5, "controlling decisions" hold squarely that "[w]here a party has knowledge of facts possibly indicating bias or partiality on the part of an arbitrator" — as Waldman did here — "he cannot remain silent and later object to the award of the arbitrators on that ground.  His silence constitutes a waiver of the objection."  *AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) (internal quotation marks omitted).

  Finally, Waldman — in the alternative — requests leave to conduct "limited targeted discovery" on the question of when he first learned of Stern's role as the Arbitrator's clerk.  Resp.'s Br. 9-10.  That request is both untimely and without merit.  "[I]n general, discovery in a post-arbitration judicial proceeding to confirm or vacate is available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an

5

application." *TransAtlantic Lines LLC v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n*, 253 F. Supp. 3d 725, 734 (S.D.N.Y. 2017) (internal quotation marks and alteration omitted).  In evaluating a request to conduct discovery in a post-arbitration proceeding, a court "must weigh the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process," looking "to the specific issues raised by the party challenging the award and the degree to which those issues implicate factual questions that cannot be reliably resolved without some further disclosure." *Frere v. Orthofix, Inc.*, Nos. 99-CV-4049 (RMB) (MHD), 00-CV-1968 (RMB) (MHD), 2000 WL 1789641, at *5 (S.D.N.Y. Dec. 6, 2000).  Here, the record — indeed, evidence that Waldman himself submitted — makes plain that he knew, or at least should have known, of Stern's relationship with the Arbitrator.  In light of that record, and the fact that Waldman himself would have been privy to any evidence concerning his own knowledge (or lack thereof), the Court declines to authorize discovery.

Accordingly, and for the reasons stated above, Waldman's motion for reconsideration must be and is denied.  The Clerk of Court is directed to terminate ECF Nos. 44 and 45.

SO ORDERED.

Dated: December 1, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge